Yunchao Song (SBN 323484)
Juris Path Law Firm PC
17800 Castleton Street, Suite 316
City of Industry, CA 91748
Telephone: (626) 391-4015
Facsimile: (626) 604-0123
*paul.song@jpjplaw.com*

Attorneys for Petitioner Jiarong Xu

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JIARONG XU, an individual, Petitioner;<br><br>v.<br><br>Warden of Adelanto ICE Processing Center; ANDRE QUINONES, Acting Director of Los Angeles ICE Field Office, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; TODD BLANCHE, Attorney General of the United States; MARKWAYNE MULLIN, Secretary of Homeland Security, in their official capacities,<br><br>Respondents. | **Case No.**<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

Petitioner Jiarong Xu ("Ms. Xu" or "Petitioner") (A-Number: 242-321-325), by and through the undersigned counsel, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and respectfully alleges as follows:

## INTRODUCTION

1. Petitioner is a native and citizen of the People's Republic of China presently detained at the Adelanto ICE Processing Center, Adelanto, California. Petitioner, by and through her undersigned counsel, hereby files this petition seeking immediate release because Respondents detained her without first providing notice and a pre-deprivation hearing to determine whether

detention was necessary.

2. The Due Process Clause of the Fifth Amendment requires the government to provide noncitizens with notice and a hearing prior to detention. Here, Petitioner's rights were violated when she was detained without such process and continue to be violated each day that she remains detained.

**CUSTODY**

3. Petitioner is currently in Respondents' physical custody. Petitioner is detained at the Adelanto ICE Processing Center, Adelanto, California. She is under Respondents' and their agents' direct control.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction under 28 U.S.C. § 2241, Article I, Section 9, Clause 2 of the United States Constitution (the "Suspension Clause"); and 28 U.S.C. § 1331, as Petitioner is presently in custody under the color of the authority of the United States, and such custody violates the Constitution, law, or treaties of the United States. This Court may grant relief pursuant to 28 U.S.C. § 2241.

5. Venue lies in the Central District of California, the judicial district in which Petitioner is currently detained. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**REQUIREMENTS OF 28 U.S.C. § 2243**

6. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require Respondents to file a return "within *three days* unless for good cause additional time, *not exceeding twenty days*, is allowed." *Id.* (emphasis added).

**THE PARTIES**

7. Petitioner is a citizen of China who has resided in the United States since May 2023, when Petitioner was admitted into the United States on a valid B-2 visa. Petitioner was taken into custody by immigration authorities on July 29, 2026, and has remained detained ever since.

8. The Warden of Adelanto ICE Processing Center is sued in his/her official capacity. He/She has immediate physical custody of Petitioner under the facility's contract with ICE to detain noncitizens. The Warden is a legal custodian of Petitioner.

9. Respondent ANDRE QUINONES is sued in his official capacity as Acting Director of Enforcement and Removal Operations of ICE's Los Angeles Field Office. Respondent QUINONES is a legal custodian of Petitioner and has the authority to release her.

10. Respondent DAVID VENTURELLA is sued in his official capacity as Acting Director of ICE. In this capacity, Respondent VENTURELLA directs and oversees ICE's Enforcement and Removal Operations, the component agency responsible for Petitioner's detention. Respondent VENTURELLA is a legal custodian of Petitioner and has the authority to release her.

11. Respondent TODD BLANCHE is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice ("DOJ"). In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals. Respondent BLANCHE is a legal custodian of Petitioner.

12. Respondent MARKWAYNE MULLIN is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, Respondent MULLIN is responsible for the implementation and enforcement of the INA and oversees ICE, the component agency responsible for Petitioner's detention. Respondent MULLIN is a legal custodian of Petitioner.

## **LEGAL FRAMEWORK**

13. The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*,

145 S. Ct. 1364, 1367 (2025).

14. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority.").

15. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty . . . .").

16. Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59-61 (1993) ("We tolerate some exceptions to the general rule requiring pre-deprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

17. Immigration detention is civil rather than punitive and is constitutionally permissible only insofar as it serves the Government's legitimate interest in "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690.

## STATEMENT OF FACTS

18. Petitioner was admitted into the United States on or about May 5, 2023, on a valid B-2 nonimmigrant visa. On or about May 7, 2024, Petitioner's spouse filed an application for asylum with United States Citizenship and Immigration Services ("USCIS"), on which Petitioner

is included as a derivative applicant, and which remains pending with that agency.

19. Following the filing of that asylum application, Petitioner applied for and was granted employment authorization by USCIS.

20. Since then, Petitioner has lived openly, worked lawfully, paid taxes, volunteered regularly, and established community ties. Moreover, Petitioner has no criminal history.

21. On or about July 29, 2026, when Petitioner arrived on a domestic flight from Dallas, she was arrested and detained by ICE officers at Ontario International Airport, without advance notice.

22. When Petitioner was arrested, she was not presented with any warrant authorizing her detention.

23. At no time prior to her detention was Petitioner notified that she would be taken into custody. She was not afforded advance notice and was not provided an opportunity to contest her detention before being taken into custody.

24. When Petitioner was taken into custody, ICE took Petitioner's personal belongings, including her passport.

25. The Department of Homeland Security then placed Petitioner in removal proceedings, which were docketed on July 30, 2026.

26. Petitioner's removal proceedings remain pending before the Immigration Court.

**COUNT ONE**

**(Violation of Procedural Due Process)**

27. Petitioner repeats and incorporates by reference the allegations set forth above.

28. Petitioner's detention violates the procedural protections guaranteed by the Due Process Clause of the Fifth Amendment. Petitioner possesses a protected liberty interest in her continued freedom from physical restraint, and by detaining her without advance notice, a pre-deprivation hearing, or any meaningful opportunity to contest the basis for her detention, Respondents deprived Petitioner of that liberty without constitutionally adequate process.

29. Evaluating the scope of Petitioner's due process rights requires a two-step inquiry: "[T]he first asks whether there exists a protected liberty interest under the Due Process Clause, and

the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

30. Courts have repeatedly recognized that noncitizens who have been permitted to live at liberty in the United States while pursuing immigration relief possess a protected liberty interest in their continued freedom from detention. *See Abdeltawab v. Armant*, No. EDCV 26-01520-MWF (DTB), 2026 WL 1045564 (C.D. Cal. Apr. 13, 2026) (preliminary injunction granting release and finding liberty interest for noncitizen who was granted employment authorization, and then was arrested by immigration authorities for the first time); *Xiaoqin Dai v. James Janecha*, et al. No. 5:26-cv-03966-PD (C.D. Cal. July 24, 2026); *see also Gagik T. v. Chestnut*, et al., No. 1:26-cv-04337-MWJS, 2026 U.S. Dist. LEXIS 141808 (E.D. Cal. June 25, 2026) (granting release to noncitizen who entered the United States on a visitor visa, applied for asylum, was granted employment authorization, and remained out-of-custody for six years; holding that by "sanctioning his continued presence in the United States by granting and renewing his employment authorization, the government vested in Petitioner a liberty interest in his continued freedom").

31. Petitioner lived at liberty in the United States for more than three years while her spouse's asylum application, on which she is included as a derivative applicant, was pending, following her lawful admission to the United States. Throughout that period, the Government granted her employment authorization and permitted her to remain out of immigration custody. Petitioner lived openly in the community, worked lawfully, volunteered regularly, established community ties, and maintained a record free of criminal history. She therefore possessed a protected liberty interest in her continued freedom from physical restraint. *See Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."); *Yuhong Ren et al v. James Janecha, et al*, Case No. 5:26-cv-04364-AJR (C.D. Cal. August 17, 2026) ("Petitioners developed a substantial liberty interest in remaining out of custody

based on their lawful admission into the United States and the community ties they established since their admission.”).

32. Once a protected liberty interest is established, courts determine what procedural protections are constitutionally required by applying the three-factor balancing test set forth in *Mathews v. Eldridge*: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. 319, 335 (1976).

33. The first *Mathews* factor strongly favors Petitioner. “Freedom from imprisonment, from government custody, detention, or other forms of physical restraint, lies at the heart of the liberty that [the Due Process] Clause protects.” *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had lived at liberty in the United States for more than three years following her lawful admission. During that time, she was included as a derivative applicant on her spouse’s pending asylum application, obtained employment authorization from the Government, worked lawfully, paid taxes, volunteered regularly, and established substantial ties to her community. Her interest in remaining free from physical confinement is substantial. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025).

34. The second *Mathews* factor also strongly favors Petitioner. Before arresting her, Respondents provided no notice, hearing, or other procedure through which she could demonstrate that detention was unnecessary. Petitioner had been lawfully admitted, had lived openly at the same time that her spouse’s asylum application remained pending, possessed government-issued employment authorization, worked and paid taxes, maintained community ties, and had no criminal history. Nothing in the circumstances preceding her arrest demonstrated that detention had become necessary, nor had Respondents identified any circumstances suggesting that Petitioner had become a danger to the community or a flight risk. Yet Respondents detained Petitioner without providing her a hearing or any other process through which she could contest the necessity of her detention. Under these circumstances, “the risk of an erroneous deprivation [of liberty] is high.” *Singh v.*

*Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

35. The third *Mathews* factor likewise favors Petitioner. Respondents' interest in detaining Petitioner without any pre-deprivation process is minimal. For approximately three years following her lawful admission, the Government permitted Petitioner to remain at liberty while her spouse's asylum application was pending and affirmatively granted her employment authorization. Nothing alleged to have occurred immediately before her arrest presented an emergency requiring detention before Petitioner could be heard. Nor had Respondents identified any evidence, prior to her detention, demonstrating that she posed a danger to the community or a risk of flight warranting immediate confinement. Providing Petitioner notice and an opportunity to be heard before depriving her of her liberty would have imposed little additional administrative burden. Indeed, a hearing before a neutral decision-maker is "one of the most basic due process protections" and would place a "de minimis . . . burden on the government," especially in light of the potential costs to the public by keeping Petitioner detained. *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated* on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). As one court has put it, "[i]n immigration court, custody hearings are routine." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

36. The *Mathews* factors show that Petitioner was entitled to a hearing, and that hearing should have occurred before Petitioner was taken into custody. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985); *see also Zinermon v. Burch*, 494 U.S. at 127 (1990) ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty . . . .").

37. Respondents provided Petitioner neither advance notice nor a pre-deprivation hearing, and no emergency or other extraordinary circumstance justified postponing process until after Petitioner had already been deprived of her liberty. Therefore, Petitioner's arrest without prior notice or a pre-deprivation hearing violated her right to procedural due process. *See J.A.E.M. v. Wofford*, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an

opportunity for a hearing before he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)).

38. Courts confronting materially similar due process violations have consistently held that immediate release, rather than a delayed post-deprivation hearing, is the appropriate remedy because it restores the *status quo* ante that existed before Respondents violated a noncitizen's constitutional rights. *Ganbat Ayurzana v. Todd Lyons*, No. 5:26-cv-02238-KES (C.D. Cal. May 13, 2026); *see also Eduardo C.A. v. Cruz*, No. 1:26-cv-06055-TLN-CSK, 2026 U.S. Dist. LEXIS 178245 (E.D. Cal. Aug. 10, 2026) ("The appropriate remedy in this case is not to bring the government into conformity with its governing statutes; it is to release Petitioner from unlawful custody.").

39. A post-detention bond hearing cannot cure the constitutional violation arising from Petitioner's detention without adequate pre-deprivation process. As many courts have recognized, a post-detention bond hearing cannot remedy that violation because, by the time such a hearing occurs, the petitioner "will have already suffered the harm" the requested procedural safeguard was intended to prevent – potentially erroneous detention. *See, e.g., Domingo v. Kaiser*, Case No. 25-cv-05893-RFL, 2025 WL 1940179 (N.D. Cal. July 14, 2025); *Charan S. v. Warden*, *CA City*, Case No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months").

40. Moreover, "allowing the government to cure such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless." *Ganbat Ayurzana v. Todd Lyons*, No. 5:26-cv-02238-KES (C.D. Cal. May 13, 2026); *see also Gudavasov v. Marin*, No. 26-cv-00541-AH-MBK, 2026 WL 712827 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); *see also Eduardo Marquez Ibarra v. Kristi Noem*, No. 5:26-cv-01007-MEMF-MAA (C.D. Cal. Mar. 20, 2026); *Reyes Servin v. Semaia*, No. 5:26-cv-02745-MAR, 2026 U.S. Dist. LEXIS 130761 (C.D. Cal. June 4, 2026); *Gagik T. v. Chestnut*, No. 1:26-cv-04337-

MWJS, 2026 U.S. Dist. LEXIS 141808 (E.D. Cal. June 25, 2026) ("When pre-deprivation process is both feasible and required, a later post-deprivation hearing does not cure the constitutional defect").

41. Indeed, courts have repeatedly found that this type of due process violation warrants not only immediate release, but also injunctive relief prohibiting further unconstitutional re-detention absent adequate procedural protections. *See, e.g., Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871 (C.D. Cal. 2026) (ordering petitioner's release and enjoining re-detention "without providing him a predetention hearing before a neutral decisionmaker where Respondent bears the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required"); *Nieves v. Mullin,* No. 5:26-cv-01471-DOC-DSR, 2026 WL 160709 (C.D. Cal. Apr. 1, 2026) (granting release and enjoining re-detention "unless his re-detention is ordered at a custody hearing before a neutral arbiter and the government has shown justification for this detention").

42. Accordingly, Petitioner is entitled to immediate remedial release rather than a belated bond hearing.

**COUNT TWO**

**(Violation of the Substantive Due Process)**

43. Petitioner repeats and incorporates by reference the allegations set forth above.

44. The Due Process Clause of the Fifth Amendment protects individuals against arbitrary governmental deprivation of liberty. Civil immigration detention is constitutionally permissible only when it bears a reasonable relationship to a legitimate governmental purpose and is not punitive in nature. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In the immigration context, the Government's recognized regulatory interests include ensuring a noncitizen's appearance at immigration proceedings and protecting the community from danger. *Id.*

45. Because immigration detention is civil rather than punitive, physical confinement cannot constitutionally be imposed merely as an end in itself. Rather, detention must bear a reasonable relationship to the Government's legitimate regulatory purposes. *See Zadvydas*, 533 U.S. at 690.

46. Here, Petitioner had lived openly in the United States for more than three years. During that period, she pursued her asylum claim, obtained employment authorization, worked, paid taxes, and had no criminal history. Respondents have identified no circumstances demonstrating that physical confinement became necessary to serve a legitimate governmental purpose.

47. Respondents' detention of Petitioner, in the absence of circumstances demonstrating that such confinement is reasonably necessary to prevent flight or protect the community, is excessive in relation to the Government's legitimate civil regulatory interests and constitutes an arbitrary deprivation of Petitioner's liberty.

48. Accordingly, Petitioner's detention violates the substantive component of the Due Process Clause of the Fifth Amendment. Petitioner is therefore entitled to a writ of habeas corpus ordering her immediate release from Respondents' custody.

## COUNT THREE

## (Unlawful Detention in Violation of 8 U.S.C. § 1226(a))

49. Petitioner repeats and incorporates by reference the allegations set forth above.

50. 8 U.S.C. § 1226(a) applies to noncitizens "pending a decision on whether the [noncitizen] is to be removed from the United States." Under § 1226(a), detention is discretionary, and individuals may be released on bond or conditional parole as approved by the Attorney General.

51. Under § 1226(a), a noncitizen may be arrested only on a warrant and would be entitled to a bond hearing before an immigration judge and must be released if the noncitizen "does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017).

52. This statutory framework applies to Petitioner. Petitioner has resided in the United States for more than three years and was already within the United States when she was arrested by ICE. Her detention therefore arises under 8 U.S.C. § 1226(a).

53. When the ICE agents detained Petitioner, she was not presented with any warrant authorizing the detention as required under § 1226(a).

54. By detaining Petitioner without providing a warrant, Respondents have acted in

excess of their statutory authority under 8 U.S.C. § 1226(a). As a result, Petitioner's continued detention violates the Immigration and Nationality Act and is unlawful.

55. Therefore, Petitioner respectfully requests that this Court order her release from detention.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests that this Court grant the following relief:

1. Assume jurisdiction over this matter;
2. Issue the writ of habeas corpus and order Respondents to show cause within three days why the requested relief should not be granted;
3. Enjoin Respondents from transferring Petitioner from the jurisdiction of this District pending these proceedings;
4. Declare that Respondents' detention of Petitioner violates the Due Process Clause of the Fifth Amendment;
5. Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately;
6. In the alternative, only if the Court concludes that Petitioner is not legally entitled to immediate release under the present circumstances based on a specific legal authority, order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within 7 days before an Immigration Judge, at which the government bears the burden of establishing by clear and convincing evidence that continued detention is appropriate to prevent her flight or to protect the public;
7. Order Respondents to return all of Petitioner's personal belongings, including her passport;
8. Upon release, prohibit Respondents from imposing any conditions of supervision, including electronic monitoring or a GPS ankle monitor, absent a hearing consistent with due process;
9. Upon release, enjoin Respondents from re-arresting or re-detaining Petitioner absent lawful process, including a pre-deprivation hearing before a neutral decisionmaker at

which the government establishes by clear and convincing evidence that detention is appropriate to prevent her flight or to protect the public;

10. Require Respondents, should they choose to conduct such a hearing, to provide Petitioner with reasonable advance notice of the time and place of the hearing;
11. Enjoin Petitioner's removal from the United States pending a final decision on this habeas action;
12. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act and any other applicable authority;
13. Grant further relief as the Court finds just and proper.

Dated: August 26, 2026

Juris Path Law Firm, PC

*/s/Yunchao Song*

Yunchao Song, Esq.
Attorneys for Petitioner Jiarong Xu